<pre>
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                              AT TACOMA
</pre>

| | |
|---|---|
| STEVE M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C19-5690 BHS <br><br> ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

## I.  BASIC DATA

Type of Benefits Sought:

    ( ) Disability Insurance

    (X) Supplemental Security Income

Plaintiff's:

    Sex:  Male

    Age:  41 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff:  Posttraumatic stress disorder ("PTSD"), schizoaffective disorder, manic depression, bipolar disorder, borderline personality disorder, dyslexia, right shoulder impairment, lower back nerve damage.  Admin. Record ("AR") at 100–01.

Disability Allegedly Began:  November 7, 2014

Principal Previous Work Experience:  Abrasive blasting equipment operator and construction worker.

Education Level Achieved by Plaintiff: GED.

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ") Paul Gaughen:

Date of Hearing: March 22, 2018

Date of Decision: September 6, 2018

Appears in Record at: AR at 16–30

Summary of Decision:

The claimant has not engaged in substantial gainful activity since April 14, 2016, the application date. *See* 20 C.F.R. §§ 416.971–76.

The claimant has the following severe impairments: Severe musculoskeletal impairments affecting the shoulders bilaterally with impingement syndrome, left sided sciatica, diabetes mellitus II, chronic obstructive pulmonary disease with emphysema component, affective disorder, and substance addiction by history. *See* 20 C.F.R. § 416.920(c).

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with exceptions. He cannot engage in vigorous repetitive activity using the right upper extremity, even if only negligible amounts of weight are being handled. He can lift or carry 10 pounds of weight less than occasionally with the right upper extremity overhead. He has no additional restrictions to the left upper extremity. He can understand, remember, and follow as needed to do simple to moderately detailed instructions, with a maximum of about five or six steps to be learned in a ready fashion and applied to work. He can call upon previously acquired information. He needs regular work hours with set breaks, and cannot handle unusual work stressors. He cannot work in a dangerous industrial setting or in unprotected high places. He can engage in routine and perfunctory social interaction needed at work with coworkers, supervisors, and/or customers. He cannot perform work duties needing a higher level or sophisticated social interaction and/or work

requiring him to frequently travel to new and unfamiliar places in order to do business. He cannot keep up with fast-paced production demands.

The claimant is unable to perform any past relevant work. *See* 20 C.F.R. § 416.965.

The claimant was a younger individual (age 18–49) on the date the application was filed. *See* 20 C.F.R. § 416.963.

The claimant has at least a high school education and is able to communicate in English. *See* 20 C.F.R. § 416.964.

Transferability of job skills is not an issue because the claimant does not have past relevant work. *See* 20 C.F.R. § 416.968.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 416.969, 416.969(a).

Before Appeals Council:

Date of Decision: June 24, 2019

Appears in Record at: AR at 1–3

Summary of Decision: Denied review.

### III. PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than

a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

Plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 1382c(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R.

§ 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

    A.    Whether the ALJ reasonably discounted Plaintiff's symptom testimony.

    B.    Whether the ALJ reasonably discounted Plaintiff's girlfriend's testimony.

    C.    Whether the ALJ reasonably rejected the opinions of examining psychologist Terilee Wingate, Ph.D.

    D.    Whether the ALJ reasonably accounted for the opinions of consulting doctor Jan Lewis, Ph.D. in the RFC.

    E.    Whether the ALJ accounted for all of Plaintiff's limitations in the RFC.

## VII. DISCUSSION

**A.    The ALJ Erred in Discounting Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ erred in discounting his symptom testimony. Pl. Op. Br., Dkt. 11 at 12–15. Plaintiff focuses his argument on his mental symptom testimony, so the Court will do the same. *See id.*

Plaintiff testified that he has visual and auditory hallucinations. *See* AR at 51–52, 55–56. He testified that he has difficulty focusing and concentrating as a result. *See* AR at 52, 236. He testified that he has depression which makes it difficult for him to get out of bed in the morning and to consistently take care of his two sons. *See* AR at 52–54. Plaintiff testified that he has difficulty with public tasks like grocery shopping and has difficulty interacting with others. *See* AR at 58–59, 241–42.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged. AR at 22.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ discounted Plaintiff's mental symptom testimony for two reasons. First, the ALJ found that Plaintiff's testimony was inconsistent with the overall medical

evidence. *See* AR at 24–26. Second, the ALJ found that Plaintiff's testimony was inconsistent with his activities of daily living. *See* AR at 26–27.

### 1. Inconsistency with the Medical Evidence

The ALJ erred in discounting Plaintiff's testimony regarding his mental impairments as inconsistent with the objective medical evidence. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

The ALJ pointed to a number of normal medical findings to support his rejection of Plaintiff's symptom testimony. *See* AR at 24–26. But those findings do not contradict Plaintiff's testimony, and many have little to do with Plaintiff's claimed symptoms. For example, the ALJ noted that Plaintiff had normal speech at several appointments. *See* AR at 24, 25, 315, 751, 1214. But Plaintiff did not allege problems with speech; he alleged problems with attention and concentration, motivation, and social interaction. *See* AR at 51–54, 58–59. Similarly, the ALJ referenced Plaintiff's lack of delusions. *See* AR at 24–26. But Plaintiff complained of hallucinations, which are distinct from

delusions. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Appendix C (5th ed. 2013) ("DSM-V").[1]  The ALJ did not identify actual inconsistencies between Plaintiff's claimed symptoms and the objective medical evidence, and thus erred in rejecting Plaintiff's testimony on this basis.

**2.  Inconsistency with Plaintiff's Activities of Daily Living**

The ALJ further erred in discounting Plaintiff's testimony regarding his mental impairments as inconsistent with Plaintiff's activities of daily living.  An ALJ may reject a plaintiff's symptom testimony based on his daily activities if they contradict his testimony or "meet the threshold for transferable work skills."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

The ALJ's discussion of Plaintiff's daily activities is not convincing.  The ALJ noted that Plaintiff "reported no difficulty reading a newspaper and performing basic math." AR at 26.  Plaintiff actually testified that he could read "like at a fifth grade

---

[1] The DSM-V defines delusion as "[a] false belief based on incorrect inference about external reality that is firmly sustained despite what almost everyone believes and despite what constitutes incontrovertible and obvious proof or evidence to the contrary." *Id.*  The DSM-V defines hallucination as "[a] sensory perception that has the compelling sense of reality of a true perception but that occurs without external stimulation of the relevant sensory organ." *Id.*

level" and could "mostly" read a newspaper. AR at 44. He testified that he could add, subtract, and multiply small numbers, but could not divide. *Id.* The ALJ noted that Plaintiff can pay bills and count change. AR at 26. The only bill the record establishes that Plaintiff pays is a flat amount to his girlfriend once a month. *See* AR at 60–61. And Plaintiff needs a calculator to count change. *See* AR at 44. The ALJ noted that Plaintiff "helps his children with homework." AR at 26. But the ALJ failed to mention that Plaintiff's children were around five and seven years old at the time. *See* AR at 312–13.

The ALJ found that Plaintiff could interact with others and visit public places because he could go grocery shopping and spent time with his girlfriend and sons. AR at 26–27. That Plaintiff can interact with his girlfriend and sons does not show that he could get along with coworkers, supervisors, or the general public. Nor does the fact that Plaintiff can go to the grocery store contradict his testimony that he struggles to shop successfully. The ALJ misconstrued the evidence and erred in discounting Plaintiff's testimony regarding his mental impairments based on his activities of daily living.

In sum, the ALJ did not provide any clear and convincing reasons for discounting Plaintiff's symptom testimony regarding his mental impairments. The ALJ thus erred.

**B.     The ALJ Erred in Rejecting Plaintiff's Girlfriend's Testimony**

Plaintiff argues the ALJ erred in rejecting lay witness statements from Plaintiff's girlfriend. Pl. Op. Br. at 11–12. Plaintiff's girlfriend reported that Plaintiff is not able to follow written or verbal instructions. *See* AR at 244, 248, 251. She reported that Plaintiff has difficulty getting along with others. *See* AR at 248–50. She reported that Plaintiff has visual and auditory hallucinations. AR at 250.

The ALJ found that Plaintiff's girlfriend "largely reiterated [Plaintiff's] allegations regarding the severity of his impairments." AR at 22. The ALJ discounted Plaintiff's girlfriend's statements because "she is not medically trained to make exacting observations" regarding medical signs and symptoms. AR at 28. The ALJ also discounted Plaintiff's girlfriend's statements because, like Plaintiff's testimony, they were inconsistent with the objective medical evidence. *Id.*

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

The ALJ erred in rejecting Plaintiff's girlfriend's testimony based on her lack of medical training. That a lay witness lacks medical training is not a valid reason to reject her testimony. *See McCutcheon v. Astrue*, 378 F. App'x 649, 651 (9th Cir. 2010). Lay witness testimony is uniquely valuable because these witnesses, unlike doctors, are able to observe the claimant's symptoms and activities on a daily basis. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing.").

The ALJ also erred in rejecting Plaintiff's girlfriend's testimony as inconsistent with the medical evidence. The ALJ relied on his analysis of the objective medical evidence as it related to Plaintiff's symptom testimony. *See* AR at 28. Because, as discussed above, that analysis was flawed, the ALJ erred in relying on it to reject Plaintiff's girlfriend's testimony. *See supra* Part VII.A.1.

## C. The ALJ Erred in Rejecting Dr. Wingate's Opinions

Plaintiff argues the ALJ erred in rejecting examining psychologist Dr. Wingate's opinions. Pl. Op. Br. at 3–9. Dr. Wingate examined Plaintiff in April 2016. *See* AR at 312–19. Dr. Wingate conducted a clinical interview, a mental status exam, and several other psychological tests. *See id.* Dr. Wingate opined that Plaintiff was markedly limited in his ability to understand, remember, and persist in tasks following detailed instructions, perform activities within a schedule, maintain attendance, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day or week without interruptions from his psychologically-based symptoms. AR at 314.

The ALJ gave Dr. Wingate's opinions little weight. AR at 27. The ALJ reasoned that Dr. Wingate's opinions were inconsistent with the overall medical evidence and Dr. Wingate's own examination findings. *Id.* The ALJ further reasoned that Dr. Wingate largely based her opinions on Plaintiff's self-reports, which the ALJ had already rejected. AR at 28. The ALJ last determined that Dr. Wingate's opinions were inconsistent with Plaintiff's activities of daily living. *Id.*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Here, Dr. Wingate's opinions were contradicted by Dr. Lewis's opinions, so the specific and legitimate standard applies. *See* AR at 109–10; *see also Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (noting that the specific and legitimate standard applies when an examining doctor's opinions are contradicted by a non-examining doctor).

The ALJ erred in rejecting Dr. Wingate's opinions as inconsistent with the overall medical evidence. The ALJ's analysis of this issue was the same as his analysis of the medical evidence with respect to Plaintiff's testimony and was thus equally flawed here. *See supra* Part VII.A.1.

The ALJ also erred in rejecting Dr. Wingate's opinions as inconsistent with her own examination findings. The ALJ noted that Dr. Wingate found Plaintiff cooperative, with normal speech, orientation, memory, and fund of knowledge. AR at 27. But Dr. Wingate also found that Plaintiff was paranoid and experienced auditory and visual hallucinations. AR at 316. Dr. Wingate found that Plaintiff's abstract thought, insight, and judgment were all outside normal limits. *Id.* Dr. Wingate, as the medical professional, was the one best positioned to interpret these normal and abnormal results. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D.

Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[ALJs] must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted).

The ALJ next erred in rejecting Dr. Wingate's opinions for relying too heavily on Plaintiff's self-reports, which the ALJ had found unreliable. First, the ALJ erred in discounting Plaintiff's symptom testimony, so he erred in rejecting Dr. Wingate's opinions for being based on that testimony. *See supra* Part VII.A. Second, an ALJ generally may not reject an opinion from a psychologist for being too heavily based on the plaintiff's self-reports when the doctor performs a clinical interview or mental status evaluation because those are objective measures that can separately support the doctor's opinion. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Dr. Wingate conducted a clinical interview and mental status exam, as well as other objective measures, so her opinions could not be rejected as too heavily based on Plaintiff's self-reports. *See* AR at 312–13, 315–19.

The ALJ last erred in rejecting Dr. Wingate's opinions as inconsistent with Plaintiff's daily activities. Once again, the ALJ's analysis here mirrored his analysis with respect to Plaintiff's testimony. *See* AR at 26–28. That analysis was flawed with respect to Plaintiff's testimony and is equally flawed here. *See supra* Part VII.A.2. The ALJ therefore failed to provide specific and legitimate reasons for rejecting Dr. Wingate's opinions and consequently erred.

**D.     The ALJ Erred in Accounting for Dr. Lewis's Opinions**

Plaintiff argues the ALJ erred in failing to fully account for Dr. Lewis's opinions in the RFC assessment. Pl. Op. Br. at 9–11. Dr. Lewis reviewed Plaintiff's records as part of the initial review of Plaintiff's disability claims. *See* AR at 104–106, 108–10. Dr. Lewis opined that Plaintiff has the ability to understand and remember simple work tasks and instructions. AR at 109. Dr. Lewis opined that Plaintiff could complete simple work tasks, with occasional waning of attention and concentration, over a 40-hour work week with customary breaks and rest periods. AR at 110. Dr. Lewis opined that Plaintiff can have superficial interaction with coworkers and supervisors, but not with the general public. *See id.* Finally, Dr. Lewis opined that Plaintiff can complete goals established by others. *Id.*

The ALJ gave Dr. Lewis's opinions "some weight." AR at 27. The ALJ noted that Dr. Lewis's opinions were generally consistent with the overall evidence, but gave Plaintiff "the benefit of the doubt regarding some of his alleged mental limitations" and included greater limitations than Dr. Lewis's opinions indicated. *Id.*

Plaintiff is correct that the ALJ's RFC does not line up with Dr. Lewis's opinions, which—contrary to the ALJ's statement—were more restrictive than the limitations in the RFC. First, Dr. Lewis reported that Plaintiff could understand and remember "simple work tasks [and] instructions." AR at 109. The ALJ found that Plaintiff could understand and remember "simple to moderately detailed instructions related to work," meaning "those which have a maximum of about five or six steps to be learned in a ready

fashion and applied to work." AR at 21. Simple instructions are not the same as moderately detailed instructions. The ALJ erred in failing to address this discrepancy.

Second, Dr. Lewis opined that Plaintiff could have brief, superficial interactions with coworkers and supervisors, where the general public was not present. *See* AR at 110. The ALJ found that Plaintiff could "engage in routine and perfunctory social interaction needed at work with coworkers, supervisors and/or customers." AR at 21. The ALJ gave no justification for this difference, and thus erred.

Finally, Plaintiff argues that Dr. Lewis reported Plaintiff would have "occasional waning of attention and concentration," so the ALJ needed to include some limitation for time off-task. *See* Pl. Op. Br. at 10–11. Plaintiff's argument fails on this point. Although Dr. Lewis did opine that Plaintiff would occasionally have lower attention and concentration, she also opined that Plaintiff was not significantly limited in his ability to perform activities within a schedule or complete a normal work day and week without interruptions from his psychologically-based symptoms. *See* AR at 109–10. The obvious inference is that the ALJ interpreted Dr. Lewis's opinion to mean that any decrease in attention or concentration was not significant enough that Plaintiff would fall below customary workplace tolerances. *Cf. Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012) (noting that the ALJ's findings should be upheld if they are supported by inferences reasonably drawn from the record). Plaintiff has thus failed to show that the ALJ erred in translating Dr. Lewis's opinion that Plaintiff's attention and concentration would occasionally wane into an RFC limitation.

In sum, the ALJ erred by failing to account for Dr. Lewis's opinions regarding understanding and memory, and social interaction, but did not err in addressing Dr. Lewis's opinions regarding attention and concentration.

**E.     The ALJ Erred in Assessing Plaintiff's RFC**

Plaintiff argues the ALJ failed to account for all of Plaintiff's limitations in the RFC. Pl. Op. Br. at 15–17. Plaintiff is correct because the ALJ erred in analyzing the evidence and thus failed to account for all of Plaintiff's limitations in the RFC or hypotheticals to the vocational expert. *See supra* Part VII.A–D. The RFC was therefore not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding that ALJ's RFC assessment and step-five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments).

Plaintiff makes a number of specific arguments about conditions that should have been addressed in the RFC. *See* Pl. Op. Br. at 15–17. The Court need not address these arguments because the ALJ must craft a new RFC on remand and may address these conditions.

**F.     Scope of Remand**

Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br. at 17–18. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must

determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand this matter for further administrative proceedings. Conflicts in the evidence remain that the ALJ must resolve, such as differences among Plaintiff's testimony, his girlfriend's testimony, Dr. Wingate's opinions, and Dr. Lewis's opinions, regarding the limitations caused by Plaintiff's impairments. *See Andrews*, 53 F.3d at 1039. Furthermore, the Court is not in a position to translate this evidence into an RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

On remand, the ALJ shall reevaluate Plaintiff's testimony regarding his mental impairments, Plaintiff's girlfriend's testimony, the opinions of Dr. Wingate, and the opinions of Dr. Lewis. The ALJ shall reassess Plaintiff's RFC, and the step five determination. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

## VIII. ORDER

Therefore, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 31st day of March, 2020.

BENJAMIN H. SETTLE
United States District Judge